FILED '08 FEB 05 12:55 USDC-ORM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

LINDA BELLINGHAM,

        Plaintiff,

   v.

HARRY & DAVID OPERATIONS CORP.,

        Defendant.

CV 07-3033-PA

**OPINION AND ORDER**

**PANNER, J.**

    Plaintiff Linda Bellingham brings this disability discrimination action against defendant Harry & David Operations Corp.[1] Plaintiff brings claims for violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213; violation of the Oregon version of the ADA; and wrongful discharge.

/ / / /

/ / / /

---

[1] Defendant states that its correct name is Bear Creek Operations Corp.

1 - OPINION AND ORDER

Defendant moves for summary judgment. Defendant also moves to strike documents submitted by plaintiff in opposition to summary judgment.

I grant defendant's motion for summary judgment. I grant defendant's motion to strike in part and deny it in part.

## BACKGROUND

Plaintiff began working as a photo stylist in 1984. Photo stylists prepare and arrange products to be photographed for advertisements and catalogs.

Plaintiff, who was based in Dallas, Texas, had worked for defendant as a freelance photo stylist when defendant recruited her to work full-time in Medford, Oregon. Plaintiff began working for defendant in 2001 in the newly created position of photo stylist manager. Plaintiff was responsible for styling products, coordinating photo shoots, training and supervising other photo stylists, and managing budgets.

On October 23, 2005, plaintiff was in a motorcycle accident. She suffered a dislocated right knee and arterial damage to her right leg, as well as crushed facial bones and a broken jaw. Plaintiff spent nine days in the hospital after the accident.

Plaintiff returned to work on February 2, 2006. After taking medical leave from February 13 to February 24, plaintiff returned to work part-time until March 10, 2006. She then took leave for two months because of knee surgery.

In April 2006, plaintiff's orthopedic surgeon, Dr. Richard E. James, reported that plaintiff could lift up to 10 pounds frequently, could sit for 8 hours a day, and could stand or walk

2 hours per day. Plaintiff could stoop, bend, twist, push, or pull up to 33% of the time, and could reach above her shoulders frequently. Plaintiff could not squat, crawl, kneel, or climb. She could work 40 hours per week, 8 hours per day.

Plaintiff returned to work on May 15, 2006, performing modified job duties. She was able to style more than thirty photos, most of which defendant used in a Harry & David catalog.

On June 9, 2006, plaintiff notified defendant that she would need to use a cane to walk "for an unknown period of time." Plaintiff stated that she could not stand in one place for more than 20 minutes at a time, could not carry more than 10 pounds (and then only with her right hand), and probably would never be able to kneel, lean over a large set, carry styled products, or work on location at a photo shoot. However, she was "able to do most managerial duties and some styling." Plaintiff states that because her health has improved, the June 2006 email does not reflect her physical capabilities as of her termination in June 2007.

Defendant placed plaintiff on paid medical leave from late June 2006 until late December 2006.

By the end of October 2006, plaintiff "was doing much better physically." On a return-to-work form dated October 30, 2006, Dr. James stated that plaintiff could frequently lift and carry up to 10 pounds, could continuously grasp, sit, and drive, and could occasionally reach over her shoulder, push and pull, bend, twist, stand, and walk. Plaintiff could not squat, kneel, or climb stairs.

3 - OPINION AND ORDER

Dr. James noted that plaintiff was not medically stationary. Based on Dr. James's October 2006 report, defendant concluded that plaintiff could not return to work.

On December 14, 2006, plaintiff and her attorney met with representatives of defendant to suggest accommodations that would allow plaintiff to return to work.

About a week later, defendant notified plaintiff that it was extending her leave of absence to February 24, 2007. Plaintiff had not requested the extension. Defendant stopped paying plaintiff after December 24, 2006.

On February 5, 2007, plaintiff and her attorney met again with defendant's representatives. Defendant rejected almost all of plaintiff's suggested accommodations.

On March 19, 2007, Dr. James completed an evaluation of plaintiff, concluding that she was medically stationary. For purposes of this motion, the parties accept Dr. James's March 2007 evaluation as an accurate description of plaintiff's physical abilities when defendant terminated her in June 2007.

In the March 2007 evaluation, Dr. James stated that plaintiff could carry up to 10 pounds frequently (34-66%), and had no restrictions on grasping, reaching above shoulder level, pushing or pulling, sitting, or driving. Plaintiff could frequently stand or walk, and occasionally (up to 33%) bend or twist. Plaintiff could not climb stairs, squat, or kneel. Plaintiff could stand or walk for up to 4 hours per day, with a break every 2 hours. She could sit for 8 hours a day, with a break every 2 hours.

4 - OPINION AND ORDER

Defendant extended plaintiff's unpaid medical leave to June 24, 2007. Defendant terminated plaintiff on June 25, 2007, stating that it was following a policy of terminating employees who had not worked for a year.

In late May 2007, plaintiff agreed to co-author a book about food styling for photographers. From July 2 to August 30, 2007, plaintiff styled photographs for the book at a studio in Dallas, Texas. Other than two weeks off, plaintiff worked full-time as a photo stylist, doing substantially the same work she did for defendant, although without management duties.

The food products plaintiff styled for the book were "extremely similar" to the products she had styled for defendant. Plaintiff prepared the food in a commercial kitchen and transported the food about 40 feet to the set. Plaintiff did not need help carrying pots, pans, skillets, fryers, and bowls of water between the kitchen and the set. To avoid kneeling, plaintiff sat on an apple crate while working on the sets.

Plaintiff created about 14 sets, and arranged about 8 shots per day. The sets were similar to those used by defendant. Plaintiff's physical limitations did not prevent her from successfully completing the work.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and

5 - OPINION AND ORDER

designate facts showing an issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

### I. Disability Discrimination Claims

To establish a prima facie case of disability discrimination under the ADA and Oregon law, plaintiff must prove that she (1) is disabled under the ADA's definition of disability; (2) is a qualified individual able to perform the essential functions of the job, with reasonable accommodations; and (3) suffered an adverse employment action because of her disability. <u>Allen v. Pacific Bell</u>, 348 F.3d 1113, 1114 (9th Cir. 2003) (per curiam); <u>Nunes v. Wal-Mart Stores, Inc.</u>, 164 F.3d 1243, 1246 (9th Cir. 1999). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Whether a person is disabled under the ADA is an "'individualized inquiry.'" <u>Thornton v. McClatchy Newspapers, Inc.</u>, 261 F.3d 789, 794 (9th Cir. 2001) (quoting <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 483 (1999)), <u>clarified</u>, 292 F.3d 1045 (9th Cir. 2002). Oregon uses the same requirements for establishing a prima facie case of disability discrimination. <u>Dark v. Curry County</u>, 451 F.3d 1078, 1082 n.1 (9th Cir. 2006).

Defendant argues that it is entitled to summary judgment on plaintiff's disability claims because (1) plaintiff does not suffer from a disability for ADA purposes; (2) plaintiff was not qualified for her former position; and (3) defendant provided

6 - OPINION AND ORDER

reasonable accommodations. Although there are issues of material fact whether plaintiff was able to work at her former position and whether defendant offered reasonable accommodations, defendant has shown that as a matter of law that plaintiff does not suffer from a disability as defined by the ADA.

### A. Disability under the ADA

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The word "substantially" in the phrase "substantially limits" "suggests 'considerable' or 'to a large degree.'" Toyota Motor Mfg. Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). The word "major" in the phrase "major life activities" "means important. 'Major life activities' thus refers to those activities that are of central importance to daily life." Id. (citation omitted). Because of its construction of the phrases "substantially limits" and "major life activities," the Supreme Court requires that courts "create a demanding standard for qualifying as disabled." Id.

> EEOC regulations define "substantially limits" as:
>
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).

7 - OPINION AND ORDER

The regulations provide examples of major life activities, which include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

### B. Plaintiff Has Not Shown Evidence of Disability

#### 1. Ability to Lift

Plaintiff's ability to lift is limited, and lifting is considered a major life activity. Thompson v. Holy Family Hosp., 121 F.3d 537, 539 (9th Cir. 1997). However, plaintiff can lift up to ten pounds frequently, which is not sufficient to show disability. See id., 121 F.3d at 540 (25-pound lifting restriction does not establish disability); Mays v. Principi, 301 F.3d 866, 869-70 (7th Cir. 2002) (plaintiff not disabled despite back injury preventing her from lifting more than ten pounds); Mellon v. Federal Express Corp., 239 F.3d 954, 957 (8th Cir. 2001) (inability to lift more than 15 pounds not disabling). Plaintiff ability to carry objects without assistance while working as a photo stylist in July 2007 shows that the lifting restriction was not substantial.

#### 2. Ability to Work

Working is treated as a major life activity. See, e.g., Walton v. U.S. Marshals Serv., 492 F.3d 998, 1009 (9th Cir. 2007), cert. denied, 2008 WL 59338, 76 U.S.L.W. 3169, 3333, 3344 (U.S. Jan. 7, 2008) (No. 07-405). Plaintiff has not presented evidence that she is substantially limited in the ability to

work. See id. (to defeat summary judgment, a plaintiff must present specific evidence about relevant labor markets and specify job requirements she cannot perform). Plaintiff's ability to work as a photo stylist immediately after her termination is evidence to the contrary.

### 3. Other Limitations

Squatting, kneeling, and climbing stairs more than one at a time are not major life activities, so plaintiff's inability to perform these activities, without more, is not evidence of disability. See, e.g., Gretillat v. Care Initiatives, 481 F.3d 649, 654 (8th Cir. 2007) ("Crawling, kneeling, crouching and squatting cannot be qualitatively characterized as sufficiently significant or essential to be on par with the functions set forth in 29 C.F.R. § 1630.2(i) as exemplifying major life activities."); Weber v. Strippit, Inc., 186 F.3d 907, 914 (8th Cir. 1999) (climbing stairs not a major life activity).

Because plaintiff has failed to show that she is disabled for ADA purposes, defendant is entitled to summary judgment on plaintiff's state and federal disability discrimination claims.

## II. Wrongful Discharge Claim

Defendant is entitled to summary judgment on plaintiff's common law wrongful discharge claim. Under Oregon law, "the availability of an adequate statutory remedy precludes a common law wrongful discharge claim." Washington v. Fort James Operating Co., No. CV-99-1300-JO, 2000 WL 1257267, at *7 (D. Or.

9 - OPINION AND ORDER

Aug. 7, 2000). Oregon's disability discrimination statutes do provide an adequate remedy. See, e.g., Underhill v. Willamina Lumber Co., No. CV-98-630-AS, 1999 WL 421596, at *4 (D. Or. May 20, 1999); Robinson v. U.S. Bancorp, No. CV-99-1723-ST, 2000 WL 435468, at *4 (D. Or.), adopted, 2000 WL 33141063 (D. Or. April 20, 2000); Zasada v. Gap, Inc., No. CV-05-1849-BR, 2006 WL 2382514, at *5-6 (D. Or. Aug. 10, 2006). Because adequate statutory remedies are available, I do not address whether plaintiff's termination was wrongful.

### III. Defendant's Motion to Strike

Defendant moves to strike documents submitted by plaintiff in opposition to the motion for summary judgment.

Plaintiff concedes defendant's motion to strike as to the declaration submitted by plaintiff's attorney.

I grant defendant's motion to strike paragraph 29 of plaintiff's declaration, which concerns defendant's decision to eliminate plaintiff's position. Plaintiff has not shown that she has first-hand knowledge to support her statement.

I deny the remainder of defendant's motion to strike.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

Defendant's motion for summary judgment (#17) is granted. Defendant's motion to strike (#40) is granted in part and denied in part.

IT IS SO ORDERED.

DATED this \_\_\_\_5\_\_\_\_ day of February, 2008.

_____
OWEN M. PANNER
U.S. DISTRICT JUDGE

11- OPINION AND ORDER